PEOPLE *v.* FRANK

PEOPLE *v.* BEETS

1. Criminal Law—Defendant Testifying—Previous Arrests—Impeachment.

> Allowing the prosecutor to question the defendant about a breaking and entering arrest for which there had been no conviction in an attempt to impeach the defendant's credibility was not reversible error where the case was tried before the decision holding that questioning about a felony arrest that did not result in conviction was error.

2. Criminal Law—Defendant Testifying—Previous Arrests—Cumulative Evidence.

> Allowing the prosecutor to impeach the defendant's credibility by asking the defendant about a breaking and entering arrest which did not result in conviction was not reversible error where the defendant was properly questioned about two breaking and entering convictions, because the improper evidence was merely cumulative.

3. Rape—Evidence—Photographs—Admissibility.

> Admitting photographs of a rape victim detailing her physical condition after being beaten and raped was not an abuse of discretion even though a witness had already testified to the victim's condition where the photographs clarified the testimony of the witness, tended to show the force and violence in the two crimes charged, rape and aggravated assault, and

---

References for Points in Headnotes

[1, 2] 58 Am Jur, Witnesses § 754.
Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.
[3] 29 Am Jur 2d, Evidence §§ 785–787.
[4] Effect of voluntary statements damaging to accused, not proper subject of testimony, uttered by testifying police or peace officer. 8 ALR2d 1013.
[5] 58 Am Jur, Witnesses §§ 792, 793, 803.

the complainant's condition was not the product of an inter-
vening medical examination.

4. CRIMINAL LAW—OTHER CRIMES—DEFENDANT'S ERROR.
Police officer's stating that he knew that there was a statutory
rape warrant for defendant's arrest when asked by defense
counsel if he knew that there was a "financial responsibility"
warrant for defendant's arrest did not constitute reversible
error where the prosecutor never brought up the issue of out-
standing warrants, never pursued the issue, and did not
emphasize it in closing remarks.

5. CRIMINAL LAW — WITNESSES — IMPEACHMENT — METHODS —
TESTIMONY OF INVESTIGATOR — PRIOR INCONSISTENT STATEMENT.
Refusing to allow an investigator for defense counsel to testify
that two witnesses, who at trial said that the defendant had
been with them the night before the crime charged was com-
mitted, had told him that the defendant had been in a bar
with them on the night the offense occurred was proper where
the trial judge said that he would allow defense counsel to
impeach the witnesses directly by prior inconsistent statements.

Appeal from Wayne, Edward S. Piggins, J.   Sub-
mitted   Division 1 November 10, 1970, at Detroit.
(Docket Nos. 7237, 7398.)   Decided March 22, 1971.
Leave to appeal denied, 385 Mich 756, 386 Mich 755.

Rudy Frank and Douglas Beets were convicted
of rape, breaking and entering, and aggravated
assault.   Defendants appeal.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Luvenia D. Dock-
ett,* Assistant Prosecuting Attorney, for the people.

Rudy Frank, *in propria persona.*

*Arthur J. Tarnow,* State Appellate Defender, for
defendant Beets.

Before: McGREGOR, P. J., and HOLBROOK and O'HARA,* JJ.

McGREGOR, P. J. Defendants were charged and convicted of rape, MCLA § 750.520 (Stat Ann 1954 Rev § 28.788), breaking and entering, MCLA § 750-.110 (Stat Ann 1965 Cum Supp § 28.305), and aggravated assault, CL 1948, § 750.81a (Stat Ann 1962 Rev § 28.276[1]), and from these convictions they appeal.

On the evening of January 26, or the early morning of January 27, 1968, the victim, a 16-year-old girl, was babysitting in a neighbor's home. She testified that the defendants broke the chain lock on the front door of the home, rushed in, knocked her unconscious, and subsequently raped her.

This opinion will first discuss those issues applicable to both defendants and then treat those issues which apply to the defendants individually.

Defendants alleged that the acts and comments of the trial court were so devoid of impartiality that defendants were prejudiced and were denied a fair trial. CL 1948, § 768.29 (Stat Ann 1954 Rev § 28-.1052), provides, in part:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

While this statute gives the judge discretion in controlling court proceedings, it does not authorize the usurpation of the attorney's role nor the blatant

_____

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

exhibition of partiality. The defendants' primary contention stems from the examination by the trial judge of the defendants' alibi witness, Arthur Chambers. We have studied the record pertaining to this questioning and do not find that it was such as to prejudice the defendants' case. Furthermore, the other alleged error concerning the judge's impartiality is without merit. If any error was committed, it was harmless.

Defendant Beets contends that the prosecution committed reversible error by attempting to impeach his credibility by the use of testimony concerning a breaking and entering felony for which there had been an arrest but no conviction, inasmuch as the charge was *nolle prossed.* Defendant contends that, since the *nolle prosequi* was not a conviction, the cross-examination was improper, pursuant to the holding in *People* v. *Brocato* (1969), 17 Mich App 277.

The language and holding in *Brocato, supra,* indicates that it was error to allow the prosecutor to question the defendant concerning a felony arrest, for which there had been no subsequent conviction, but *People* v. *Ruppuhn* (1970), 25 Mich App 62, has held that *Brocato* has only prospective application and, therefore, would not be applicable here since this trial was completed in 1968.

Furthermore, in the present case, defendant had been questioned about two prior convictions before the question arose regarding the *nolle prosequi,* and the previous offenses were also breaking and entering. We find that the jury was not given any different picture due to the discussion of this third offense. The challenged evidence was merely cumulative and its improper admission was not reversible error.

Defendant Beets claims that the admission of the photographs of the victim, showing her physical condition after being beaten and raped, was error. His contention is that, since a witness had already testified as to the girl's condition, the photographs were of limited probative value. It is his contention that the introduction of the photos was intended to inflame the jury and was, therefore, highly prejudicial. Although he acknowledged the lack of a timely objection to the introduction of such photos, the defendant argues in the alternative that he should receive a new trial, because of the trial counsel's mistake. *People* v. *DeGraffenreid* (1969), 19 Mich App 702. This Court, in *People* v. *Turner* (1969), 17 Mich App 123, a murder case, held that the admission of photographs was discretionary, but found that the trial court there had abused its discretion. The pictures in that case were the product of an intervening medical examination and the Court indicated that the photographs taken at such examination must be scrutinized more carefully than those taken by the police at the scene of the crime.

We find the present case more like *People* v. *Eddington* (1970), 23 Mich App 210, 227. In that case, a first-degree murder case, the prosecution introduced into evidence five colored photographs of the victims. The pictures detailed the conditions of the victims' bodies as the police found them. The scenes depicted were helpful in illuminating a material issue—the malice with which the crimes were committed. Furthermore, the Court noted that the photographs were not the product of an intervening medical examiner, as in *People* v. *Turner, supra*. The Court found that the judge, in admitting the photographs, did not abuse his discretion under the facts and circumstances presented.

In the present case, the photos were taken following the beating and no autopsy was involved. The photos helped to clarify the testimony of a witness and tended to show the force and violence involved in these crimes—aggravated assault and rape. The judge did not abuse his discretion.

During the trial, the prosecution introduced evidence that defendant Frank attempted to avoid arrest for the present charges since the police unsuccessfully sought to locate him for a month. (Defendant Frank voluntarily surrendered to the police on March 4, 1968.) In attempting to justify defendant's apparent flight from the police, the defense counsel asked a police officer if he was aware of an outstanding warrant on financial responsibility[1] against the defendant. In response, the officer indicated he was not, but that he did know of a warrant for statutory rape. Defendant Frank contends that this statement was prejudicial because of its necessary implications, and cites *People v. Brocato, supra,* for the proposition that care must be taken in examining witnesses when the offense charged is highly inflammatory. Although no trial objection was made, he asserts that an objection would have been meaningless and that it would have further alerted the jury to the issue.

In the instant case, the prosecution never brought up the issue of the outstanding warrant, never pursued the issue, and did not emphasize it in the closing remarks. It was defense counsel who had control of this witness and should have had the unrespon-

---

[1] This Court is unable to decipher from the record exactly what defense counsel meant by this term, except that it related to some aspect of the financial responsibility act of the Michigan Vehicle Code, MCLA § 257.1 *et seq.* (Stat Ann 1968 § 9.1801 *et seq.*). The theory apparently was that while defendant admittedly knew that he was being sought by the police, the reason he was wanted did not involve any serious degree of moral turpitude.

sive remark stricken. No reversible error was committed here.

Defense counsel called two alibi witnesses to establish that defendant Frank was at a bar on the date in question and at the time when he was reported to have committed the crime against the complainant. The two witnesses in question were the bartender and the owner of the bar, who testified that defendant Frank was in the bar on the night previous to the alleged offense. Inasmuch as the testimony of the witnesses was not beneficial to defendant, an effort was made to call one Frank Reeves, an investigator for defense counsel's office, so that he could testify that these witnesses had previously told him that this defendant was in the bar on the evening of the 26th and the morning hours of the 27th of January, 1968. Although the trial judge offered to allow the defense counsel to examine the bartender and the owner regarding any prior inconsistent statements, he refused to allow their direct impeachment by this investigator. Under Michigan law, this ruling was correct. *Higdon* v. *Kelley* (1954), 339 Mich 209, 216–219; see *People* v. *Lee* (1943), 307 Mich 743; 5 Callaghan's Michigan Pleading & Practice (2d ed), § 37.217, p 574.

The trial court is affirmed.

All concurred.